UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION
AT COLUMBUS

| | | |
|---|---|---|
| JOSEPH O'BYRNE | ) | CASE NO. |
| c/o Goldberg Legal Co., LPA | ) | |
| 31300 Solon Road – Suite 12 | ) | JUDGE |
| Solon, Ohio 44139, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SARA O'BYRNE | ) | |
| c/o Goldberg Legal Co., LPA | ) | |
| 31300 Solon Road – Suite 12 | ) | |
| Solon, Ohio 44139, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PAUL BAHLER | ) | |
| c/o Goldberg Legal Co., LPA | ) | |
| 31300 Solon Road – Suite 12 | ) | |
| Solon, Ohio 44139, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JENNIFER BAHLER | ) | |
| c/o Goldberg Legal Co., LPA | ) | |
| 31300 Solon Road – Suite 12 | ) | |
| Solon, Ohio 44139, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| STEPHEN DAVIES | ) | |
| c/o Goldberg Legal Co., LPA | ) | |
| 31300 Solon Road – Suite 12 | ) | |
| Solon, Ohio 44139, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| CATHERINE DAVIES | ) | |
| c/o Goldberg Legal Co., LPA | ) | |
| 31300 Solon Road – Suite 12 | ) | |
| Solon, Ohio 44139, | ) | |
| | ) | |
| and | ) | |

LUKE PRESTON )
c/o Goldberg Legal Co., LPA )
31300 Solon Road – Suite 12 )
Solon, Ohio 44139, )
 )
    and )
 )
SHASTA PRESTON )
c/o Goldberg Legal Co., LPA )
31300 Solon Road – Suite 12 )
Solon, Ohio 44139, )
 )
    and )
 )
CHARLES HOWELL )
c/o Goldberg Legal Co., LPA )
31300 Solon Road – Suite 12 )
Solon, Ohio 44139, )
 )
    and )
 )
CINDY HOWELL )
c/o Goldberg Legal Co., LPA )
31300 Solon Road – Suite 12 )
Solon, Ohio 44139, )
 )
    and )
 )
ROBERT WYCOFF )
c/o Goldberg Legal Co., LPA )
31300 Solon Road – Suite 12 )
Solon, Ohio 44139, )
 )
    and )
 )
ELIZABETH WYCOFF )
c/o Goldberg Legal Co., LPA )
31300 Solon Road – Suite 12 )
Solon, Ohio 44139, )
 )
    and )
 )
ERIC SNYDER )
c/o Goldberg Legal Co., LPA )
31300 Solon Road – Suite 12 )
Solon, Ohio 44139, )
 )
    and )

BRANDIE HARDIN                          )
c/o Goldberg Legal Co., LPA             )
31300 Solon Road – Suite 12             )
Solon, Ohio 44139,                      )
                                        )
        and                             )
                                        )
MARK FEGAN                              )
c/o Goldberg Legal Co., LPA             )
31300 Solon Road – Suite 12             )
Solon, Ohio 44139,                      )
                                        )
        and                             )
                                        )
LISA ROBERTS                            )
c/o Goldberg Legal Co., LPA             )
31300 Solon Road – Suite 12             )
Solon, Ohio 44139,                      )
                                        )
        and                             )
                                        )
TIMOTHY MILLER                          )
c/o Goldberg Legal Co., LPA             )
31300 Solon Road – Suite 12             )
Solon, Ohio 44139,                      )
                                        )
        and                             )
                                        )
LAUREN MILLER                           )
c/o Goldberg Legal Co., LPA             )
31300 Solon Road – Suite 12             )
Solon, Ohio 44139,                      )
                                        )
        and                             )
                                        )
JOHN WILLIAMS                           )
c/o Goldberg Legal Co., LPA             )
31300 Solon Road – Suite 12             )
Solon, Ohio 44139,                      )
                                        )
        and                             )
                                        )
PATRICIA HOPE WILLIAMS                  )
c/o Goldberg Legal Co., LPA             )
31300 Solon Road – Suite 12             )
Solon, Ohio 44139,                      )
                                        )
                Plaintiffs,             )

3

```
                                        )
        -vs-                            )
                                        )
WEYERHAEUSER COMPANY                    )
220 Occidental Avenue South            )
Seattle, Washington 98104              )
                                        )
        and                            )
                                        )
WESTPORT HOMES, INC.                   )
9210 N. Meridian Street,               )
Indianapolis, Indiana 46260,           )
                                        )
        and                            )
                                        )
WESTPORT HOMES, INC.                   )
c/o CT Corporation System              )
4400 Easton Commons Way, Suite 125     )
Columbus, Ohio 43219,                  )
                                        )
              Defendants.              )
```

Plaintiffs, by and through counsel, for their Complaint against Defendants, Weyerhaeuser Company ("Weyerhaeuser") and Westport Homes, Inc. ("Westport"), and each of them, jointly and severally, hereby claim, allege, state and aver as follows:

**PARTIES AND JURISDICTION**

1.      Plaintiffs, Joseph O'Byrne and Sara O'Byrne ("Plaintiffs O'Byrne"), are natural persons residing in Pickaway County, Ohio. On or about August 26, 2016, Plaintiffs O'Byrne executed a purchase agreement with Westport for the construction of their home located at 169 Chestnut Commons Dr., Commercial Point, Ohio 43116 (a copy of which is attached hereto as Exhibit "A" and incorporated by reference herein). After suffering unexplained medical conditions and personal injuries after moving into their home, Plaintiffs O'Byrne first discovered in mid-July 2017, and could not have reasonably discovered before then, that their home had a latent defect in that Westport had installed in their home defective Flak-Jacket Joists manufactured by Weyerhaeuser that emitted dangerous and unhealthy levels of invisible and noxious formaldehyde gas.

4

2.      Plaintiffs, Eric Snyder and Brandie Hardin ("Plaintiffs Snyder & Hardin"), are natural persons residing in Pickaway County, Ohio. On or about August 20, 2016, Plaintiffs Snyder & Hardin executed a purchase agreement with Westport for the construction of their home located at 158 Chestnut Commons Dr., Commercial Point, Ohio 43116 (a copy of which is attached hereto as Exhibit "B" and incorporated by reference herein). After suffering unexplained medical conditions and personal injuries after moving into their home, Plaintiffs Snyder & Hardin first discovered in mid-July 2017, and could not have reasonably discovered before then, that their home had a latent defect in that Westport had installed in their home defective Flak-Jacket Joists manufactured by Weyerhaeuser that emitted dangerous and unhealthy levels of invisible and noxious formaldehyde gas.

3.      Plaintiffs, Mark Fegan and Lisa Roberts ("Plaintiffs Fegan & Roberts"), are natural persons residing in Pickaway County, Ohio. On or about November 28, 2016, Plaintiffs Fegan & Roberts executed a purchase agreement with Westport for the construction of their home located at 162 Chestnut Commons Dr., Commercial Point, Ohio 43116 (a copy of which is attached hereto as Exhibit "C" and incorporated by reference herein). After suffering unexplained medical conditions and personal injuries after moving into their home, Plaintiffs Fegan & Roberts first discovered in mid-July 2017, and could not have reasonably discovered before then, that their home had a latent defect in that Westport had installed in their home defective Flak-Jacket Joists manufactured by Weyerhaeuser that emitted dangerous and unhealthy levels of invisible and noxious formaldehyde gas.

4.      Plaintiffs, Paul Bahler and Jennifer Bahler ("Plaintiffs Bahler"), are natural persons residing in Pickaway County, Ohio. On or about August 29, 2016, Plaintiffs Bahler executed a purchase agreement with Westport for the construction of their home located at 170 Chestnut Commons Dr., Commercial Point, Ohio 43116 (a copy of which is attached hereto as Exhibit "D" and incorporated by reference herein. After suffering unexplained medical conditions and personal injuries after moving into their home, Plaintiffs Bahler first discovered in late July 2017, and could not have

reasonably discovered before then, that their home had a latent defect in that Westport had installed in their home defective Flak-Jacket Joists manufactured by Weyerhaeuser that emitted dangerous and unhealthy levels of invisible and noxious formaldehyde gas.

5.  Plaintiffs, Stephen Davies and Catherine Davies ("Plaintiffs Davies"), are natural persons residing in Pickaway County, Ohio.  On or about August 21, 2016, Plaintiffs Davies executed a purchase agreement with Westport for the construction of their home located at 167 Chestnut Commons Dr., Commercial Point, Ohio 43116 (a copy of which is attached hereto as Exhibit "E" and incorporated by reference herein.  After suffering unexplained medical conditions and personal injuries after moving into their home, Plaintiffs Davies first discovered in late July 2017, and could not have reasonably discovered before then, that their home had a latent defect in that Westport had installed in their home defective Flak-Jacket Joists manufactured by Weyerhaeuser that emitted dangerous and unhealthy levels of invisible and noxious formaldehyde gas.

6.  Plaintiffs, Luke Preston and Shasta Preston ("Plaintiffs Preston"), are natural persons residing in Pickaway County, Ohio.  On an unspecified date in the late summer of 2016, Plaintiffs Preston executed a purchase agreement with Westport for the construction of their home located at 166 Chestnut Commons Dr., Commercial Point, Ohio 43116 (a copy of which is attached hereto as Exhibit "F" and incorporated by reference herein).  After suffering unexplained medical conditions and personal injuries after moving into their home, Plaintiffs Preston first discovered in late July 2017, and could not have reasonably discovered before then, that their home had a latent defect in that Westport had installed in their home defective Flak-Jacket Joists manufactured by Weyerhaeuser that emitted dangerous and unhealthy levels of  invisible and noxious formaldehyde gas.

7.  Plaintiffs, Charles Howell and Cindy Howell ("Plaintiffs Howell"), are natural persons residing in Pickaway County, Ohio.  On or about November 14, 2016, Plaintiffs Howell executed a purchase agreement with Westport for the construction of their home located at 159 Chestnut

Commons Dr., Commercial Point, Ohio 43116 (a copy of which is attached hereto as Exhibit "G" and incorporated by reference herein). After suffering unexplained medical conditions and personal injuries after moving into their home, Plaintiffs Howell first discovered in mid-July 2017, and could not have reasonably discovered before then, that their home had a latent defect in that Westport had installed in their home defective Flak-Jacket Joists manufactured by Weyerhaeuser that emitted dangerous and unhealthy levels of invisible and noxious formaldehyde gas.

8.     Plaintiffs, Robert Wycoff and Elizabeth Wycoff ("Plaintiffs Wycoff"), are natural persons residing in Pickaway County, Ohio. On or about December 30, 2016, Plaintiffs Wycoff executed a purchase agreement with Westport for the construction of their home located at 214 Sycamore Lane, Commercial Point, Ohio 43116 (a copy of which is attached hereto as Exhibit "H" and incorporated by reference herein). Plaintiffs Wycoff first discovered on or about July 24, 2017, and could not have reasonably discovered before then, that their home had a latent defect in that Westport had installed in their home defective Flak-Jacket Joists manufactured by Weyerhaeuser that emitted dangerous and unhealthy levels of invisible and noxious formaldehyde gas.

9.     Plaintiffs, Timothy Miller and Lauren Miller ("Plaintiffs Miller"), are natural persons residing in Fairfield County, Ohio. Plaintiffs Miller executed a purchase agreement with Westport for the construction of their home located at 1845 Bent Creek Drive, Lancaster, Ohio 43130 (a copy of which will be submitted when located). After suffering unexplained medical conditions and personal injuries after moving into their home, Plaintiffs Miller first discovered in mid-July 2017, and could not have reasonably discovered before then, that their home had a latent defect in that Westport had installed in their home defective Flak-Jacket Joists manufactured by Weyerhaeuser that emitted dangerous and unhealthy levels of invisible and noxious formaldehyde gas.

10.     Plaintiffs, John Williams and Patricia Hope Williams ("Plaintiffs Williams"), are natural persons residing in Fairfield County, Ohio. On or about May 21, 2017, Plaintiffs Williams

executed a purchase agreement with Westport for the construction of their home located at 47 Twain Avenue, Lithopolis, Ohio 43136 (a copy of which is attached hereto as Exhibit "I" and incorporated by reference herein). After suffering unexplained medical conditions and personal injuries after moving into their home, Plaintiffs Williams first discovered in mid-August 2017, and could not have reasonably discovered before then, that their home had a latent defect in that Westport had installed in their home defective Flak-Jacket Joists manufactured by Weyerhaeuser that emitted dangerous and unhealthy levels of invisible and noxious formaldehyde gas. On information and belief, Westport knew or reasonably should have known, and failed to disclose to Plaintiffs Williams, as of the date the purchase agreement was entered into and/or the purchase transaction closed and Westport permitted Plaintiffs Williams to occupy their home, that it had installed defective Flak-Jacket Joists manufactured by Weyerhaeuser in Plaintiffs Williams' home.

11.     Weyerhaeuser is a foreign corporation formed and organized under the laws of the State of Washington, with its principal place of business located at 220 Occidental Avenue South, Seattle, Washington.

12.     Weyerhaeuser designed and produced its proprietary TJI Joists with Flak Jacket fire protection ("Joists"), which, according to Weyerhaeuser, is a result of "[m]ore than 50 years of wood research and technology." Weyerhaeuser represented that "a survey of builders" determined that "TJI joists were the number one brand in quality, familiarity and usage." Weyerhaeuser marketed the TJI Joists with Flak Jacket fire protection to builders for use in home construction throughout the United States, including without limitation to Westport for its use in constructing homes in Pickaway and Fairfield Counties, Ohio, and elsewhere.

13.     On July 18, 2017, Weyerhaeuser issued a written statement admitting that the Flak Jacket coating marketed by Weyerhaeuser for residential use and installed by Westport in the construction of Plaintiffs' homes included a formaldehyde-based resin, which off-gassed into the

homes in which they were used, rendering such homes unsafe for habitation without remediation.

14.     Since December 2016, Weyerhaeuser manufactured, sold and/or distributed the defective Joists throughout Ohio and the United States for installation into residential and other structures.  At all times, Weyerhaeuser marketed, sold and generally represented the defective Joists to include "[a]ll the quality and cost-efficiency you expect from" its engineered lumber products.

15.     Westport is a foreign corporation formed and organized under the laws of the State of Indiana, with its principal place of business in Indianapolis, Indiana.  Westport is registered as a foreign corporation doing business in Ohio with the Ohio Secretary of State's office and has appointed CT Corporation Systems as its registered agent in Ohio.

16.     Westport contracted with Plaintiffs to construct their homes in Pickaway County, Ohio, and in Fairfield County, Ohio.  Westport installed Weyerhaeuser's TJI Joists with Flak Jacket Protection into each Plaintiff's home.

17.     On information and belief, Westport knew or reasonably should have known, or were negligent in not knowing, that the TJI Joists with Flak Jacket Protection manufactured and sold by Weyerhaeuser were dangerous, defective and not suited for their intended use in residential home construction at the time such Joists were installed in some or all of Plaintiffs' homes, or at least by such time as some of all of Plaintiffs closed on their home construction and were cleared by Westport to move into and occupy their respective homes.

18.     Plaintiffs allege an amount in controversy for each of them in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

19.     This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

20.     This Court has personal jurisdiction over each Defendant because each Defendant

corporation has engaged in commerce and business activities in Columbus, Pickaway and Fairfield Counties, Ohio, sufficient to form minimum contacts with the State of Ohio for jurisdictional purposes.

21.     Venue is proper in the Southern District of Ohio, Eastern Division, pursuant 28 U.S.C. § 1391, because each Defendant corporation conducts business, resides, or is subject to personal jurisdiction in the Southern District of Ohio, Eastern Division, and because the real property at issue in these claims is located in this judicial district and a substantial part of the events giving rise to these claim occurred in this judicial district.

## FACTUAL BACKGROUND

22.     Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

23.     Weyerhaeuser manufactured the defective Joists and sold and distributed those Joists throughout Ohio for installation into residential homes and other structures since at least December 2016.

24.     Production of the Joists continued through July 2017.

25.     At all relevant times, Defendants represented and marketed the Joists to be of excellent quality, cost effective and durable.

26.     Defendants represented the Joists to offer the "high-performance" flooring consumers can rely on with the fire-resistance that new regulations require and the Defendants also represented that the Joists do not require special handling.

27.     Weyerhaeuser claimed its Joists were backed by its support and its sales brochures and marketing literature were widely distributed to building professionals who installed the Joists.

28.     The Joists were sold with a fully transferable warranty, warrantying against any "manufacturing defects" and that warranty remains in effect for the "lifetime" of the structure.

29.     Despite Weyerhaeuser and Westport's representations, the Joists are defectively designed, formulated or manufactured and when installed, the Joists emit noxious and potentially toxic gases. The coating on the Joists contains a formaldehyde-based resin that off-gasses formaldehyde in excess of acceptable levels, which causes serious air quality issues if not rendering the home uninhabitable.

30.     The concentration of noxious or toxic gasses in Plaintiffs' home exceeds the level even considered safe for short-term exposure.

31.     In July 2017, Weyerhaeuser sent a letter to "Dealers/Distributors/Home Builders" warning them of the dangers and quality of life issues related to the off-gassing problem associated with the Joists.

32.     Shortly thereafter, Weyerhaeuser sent another letter asking all dealers to immediately cease the sale of any of the Joists manufactured after December 2016.

33.     On July 18, 2017, Weyerhaeuser admitted that it "has determined that recent customer feedback regarding an odor in certain newly constructed homes is related to a recent formula change to the Flak Jacket coating used on the Joists that included a formaldehyde-based resin."

34.     Homeowners were notified of the need to vacate their homes until the defects could be remediated.

35.     Formaldehyde is recognized as a health hazard linked to an increased risk of cancer of the nose, throat and sinuses, and nasopharyngeal and oropharyngeal cancer, lung cancer and leukemia.

36.     Exposure, even short-term exposure, can result in other respiratory illnesses.

37.     Defendants offered to remediate the off-gassing problem associated with the defective Joists by covering the Joists with paint, claiming that the paint will bind the formaldehyde and reduce emissions. The proposed remediation was inadequate and unsuccessful.

38.     According to Weyerhaeuser, the paint developed will "reduce emissions," it does not

eliminate the dangerous and noxious emissions. While Defendants maintain that the remediation has been effective, the proposed method of remediation has been rejected by professionals and has proven inadequate in Plaintiffs' situation.

39.     Westport installed the defective Joists.  Contractors hired by Weyerhaeuser and/or Westport and acting under their direct supervision performed the various remediation processes offered by Weyerhaeuser and/or Westport.

40.     Defendants attempted the paint-remediation in plaintiffs' home, but the paint Defendants used simply flaked off exposing the underlying coating that is continuing to emit the noxious or toxic gasses. Upon information and belief, the remediation has not provided any relief from the noxious or toxic off-gassing.

41.     Any proposed remediation, even if Defendants agree to have the Joists removed and replaced, will require future monitoring to ensure that the home does not have any excessive levels of formaldehyde.  Medical monitoring for the Plaintiffs may also be necessary in the event that the formaldehyde and other toxic gases remain in the home even after the Joists are removed and replaced. According to Weyerhaeuser, the paint developed will only "reduce emissions," it does not eliminate the dangerous and noxious emissions.

42.     The remediation options offered by the Defendants to remedy the defective Joists were wholly inadequate to compensate the Plaintiffs for the damages they incurred and will continue to incur.  The remediation attempt failed to correct the problem and exposed Plaintiffs to the continued loss of use of their home, the permanent diminution of value as well other past and future damages.

43.     Finally, after Plaintiffs had to specifically request and insist upon a change in the remediation methodology, Weyerhaeuser and/or Westport agreed to and utilized a mechanical removal, or cryoblasting, of the substance in the Flak-Jacket Joists that emitted the invisible and noxious formaldehyde gas.  Again, this process was performed by contractors chosen by and acting under the

direct control and supervision of Weyerhaeuser and/or Westport.

## FIRST CLAIM – BREACH OF CONTRACT

44.     Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

45.      Plaintiffs and Westport entered a legally binding Purchase Agreement, attached as "Exhibit A" to this complaint, in which Westport was obligated to construct the home in a workmanlike manner as defined under Ohio law and in conformity with all applicable rules and regulations.

46.     Westport failed to construct the home in a workmanlike manner by using or incorporating defective materials into Plaintiffs' home, which made the home dangerous and uninhabitable.

47.     Plaintiffs performed all obligations arising under the Purchase Agreement, and despite this, Westport failed to deliver the home that is constructed in a workmanlike manner.

48.     Westport's conduct has breached this and other contractual obligations arising under the Purchase Agreement.

49.     As a direct and proximate result of Westport's breach of contract, Plaintiffs seek all legal remedies and any and all appropriate pecuniary, nonpecuniary and punitive damages in an amount to be proven at trial in excess of seventy-five thousand dollars ($75,000).

## SECOND CLAIM – UNJUST ENRICHMENT

50.     Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

51.     Defendants have received substantial benefits from Plaintiffs purchasing the Joists and homes or other structures and Defendants have knowingly accepted and reaped those benefits.

52.     Defendants knew or should have known that the payments rendered by Plaintiffs were given and received with the expectation that the Joists would perform as represented.

53.     Westport knew or should have known that the payments rendered by Plaintiffs were given and received with the expectation that the homes or other structures Plaintiffs were purchasing were habitable and valued based on the valuation for a defect free home.

54.     It is inequitable for the Defendants to retain the benefit of the payments under the circumstances.

55.     As a direct and proximate result of Westport's breach of contract, Plaintiffs seek all legal remedies and any and all appropriate pecuniary, nonpecuniary and punitive damages in an amount to be proven at trial in excess of seventy-five thousand dollars ($75,000).

## THIRD CLAIM – HOME CONSTRUCTION SERVICE SUPPLIERS ACT

56.     Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

57.     At all relevant times, Westport was a home construction service supplier as defined under R.C. 4722.01.

58.     Plaintiffs and Westport entered a "home construction service contract on or about August 2016.

59.     Westport has knowingly committed violations under the Home Construction Services Act under R.C. Chapter 4722.

60.     Plaintiffs provided the required and adequate notices to Westport and afforded them adequate time to remediate the defects caused by the installation of the defective Joists.

61.     Any and all remediation efforts to date have not successfully remediated the problems associated with the defective Joists.

62.     As a direct and proximate result of Defendants' conduct, Plaintiffs were harmed and will continue to be harmed. Plaintiffs seek all legal and appropriate pecuniary, nonpecuniary and punitive damages in an amount to be proven at trial in excess of seventy-five thousand dollars ($75,000).

## FOURTH CLAIM – BREACH OF EXPRESS WARRANTY

63.     Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

64.      Weyerhaeuser manufactured, marketed and sold its proprietary Joists into the stream of commerce with the intent that the Joists would be purchased by contractors, subcontractors and end users for installation in residential homes and other structures owned and purchased by Plaintiffs.

65.     Plaintiffs have provided written notice to Defendants regarding the defects in their home and other structures and the Defendants breaches of warranty.

66.     Westport expressly warranted that Plaintiffs' home would be constructed in a workmanlike manner.

67.     Defendants' expressly warrantied its Joists as being suited as a building material with a lifetime useful life commensurate with the life of the structure into which the Joists are installed. These warranties became part of the benefit of the bargain and Plaintiffs relied on these and other representation and warranties from Defendants when entering the Purchase Agreement.

68.     Defendants received payments, directly or indirectly, from Plaintiffs in exchange for the warranties.

69.     Under the Defendants' express warranties, Defendants are obligated to pay for the cost to replace the defective Joists and any damages Plaintiffs incurred related to the installation of the defective product.

70.     Any limitations or exclusions in the Defendants' warranties are unconscionable and unenforceable.

71.     The consequential or incidental losses incurred by Plaintiffs were within the contemplation of the parties, and therefore, should not be prohibited when the bargained for remedy fails its essential purpose.

72.     Defendants' Joists were defective when acquired by Plaintiffs and were unfit for their intended use.

73.     Westport knew its Joists were defective but continued to use the Joists in Plaintiffs' home.  Westport knew or should have known of the defective nature of the Joists and the unworkmanlike construction of Plaintiffs' home long before Weyerhaeuser went public with the information regarding the defective Joists in July 2017.

74.     Plaintiffs have detrimentally relied on Defendants warranties.

75.     Weyerhaeuser's warranty coverage is inadequate to reimburse for the costs of repairing or removing the defective Joists and does not compensate Plaintiffs for any damages to the home, for any and all consequential and ancillary damages caused by the defective Joists or for the diminution in value of Plaintiffs' home.

76.     Defendants have actual notice of their breaches of warranties.

77.     As a direct and proximate result of Defendants' conduct, Plaintiffs were harmed and will continue to be harmed. Plaintiffs seek all legal and appropriate pecuniary, nonpecuniary and punitive damages in an amount to be proven at trial in excess of seventy-five thousand dollars ($75,000).

## **FIFTH CLAIM – BREACH OF IMPLIED WARRANTY**

78.     Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same

were fully rewritten herein.

79.     Weyerhaeuser designed, manufactured, marketed and sold the Joists to the public knowing the intended use was for in construction of residential and other structures.

80.     Defendants promoted to the plaintiffs that the Joists were of a quality that would pass without objection in the trade and were fit for the ordinary purpose for which the Joists were used.

81.     The Joists sold by Defendants were defective and not merchantable at the time of sale.

82.     Weyerhaeuser breached its implied warranty of merchantability because the Joists were not of merchantable qualify and were unfit for the ordinary purposes for which they were designed and used.

83.     Plaintiffs timely notified Defendants of the defective nature of its Joists and of its breach of warranty of merchantability.

84.     As a direct and proximate result of Defendants' conduct, Plaintiffs were harmed and will continue to be harmed. Plaintiffs seek all legal and appropriate pecuniary, nonpecuniary and punitive damages in an amount to be proven at trial in excess of seventy-five thousand dollars ($75,000).

## SIXTH CLAIM – STATUTORY STRICT LIABILITY
## DESIGN OR MANUFACTURING DEFECT

85.     Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

86.     Weyerhaeuser designed and manufactured the Joists to be used and installed in the Plaintiffs' home.

87.     The design, formulation or manufacturing of the Joists, including the formulation of the coating, was defective.

88.     At all relevant times Westport was a supplier of the Joists as defined by Section

2307.71, *et seq.* of the Ohio Revised Code.

89.     Defendants were engaged in the business of manufacturing and selling the Joists, which were expected to reach the consumer without a substantial change in the condition in which it was sold.

90.     The Joists were defectively designed and/or manufactured and because of such defects, or any deviation in a material way from the Joists' design specifications, formula or performance standards of the manufacturer, the Joists were more dangerous to the public and posed a more substantial likelihood of harm than an ordinary consumer would expect when the Joists were used as intended in the construction of Plaintiffs' residential structure.

91.     The design defect existed at the time the Joists were sold or when the Joists left Defendants' possession or control and the risks inherent to that design outweigh the benefits of the design.

92.     At all relevant times, the Joists did not conform to the representations made by the Defendants.

93.     Because of the design and formulation defects, the foreseeable risks associated with the design and formulation of the Joists exceeded any benefits associated therewith.  The risk of potential harm to Plaintiffs was severe in light of the intended uses of the Joists.

94.     At the time the Joists left the control of Defendants, a practical and economically feasible alternative design and formulation was available and would have prevented the damages and harms suffered by Plaintiffs.

95.     The design and formulation of the Joists failed to conform to public and private standards.

96.     As a direct and proximate result of Defendants' conduct, Plaintiffs were harmed and will continue to be harmed. Plaintiffs seek all legal and appropriate pecuniary, nonpecuniary and

punitive damages in an amount to be proven at trial in excess of seventy-five thousand dollars ($75,000).

<strong><u>SEVENTH CLAIM – COMMON LAW STRICT LIABILITY<br>DESIGN OR MANUFACTURING DEFECT</u></strong>

97.     Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

98.     Weyerhaeuser designed and manufactured the Joists to be used and installed in the Plaintiffs' home.

99.     Defendants were engaged in the business of manufacturing and selling the Joists, which were expected to reach the consumer without a substantial change in the condition in which it was sold.

100.    The design, formulation or manufacturing of the Joists, including the formulation of the coating, was defective.

101.    When the Joists left the Defendants' control, the Joists deviated in a material way from their design or performance standards and were unreasonably dangerous to the Plaintiffs or other ordinary consumers.

102.    The Joists were defectively designed and/or manufactured and because of such defects, the Joists were more dangerous to the public and posed a more substantial likelihood of harm than an ordinary consumer would expect when the Joists were used as intended in the construction of Plaintiffs' residential structure.

103.    The design defect existed at the time the Joists were sold or when the Joists left Defendants' possession or control and the risks inherent to that design outweigh the benefits of the design.

104.    Because of the design and formulation defects, the foreseeable risks associated with the

design and formulation of the Joists exceeded any benefits associated therewith. The risk of potential harm to Plaintiffs was severe in light of the intended uses of the Joists.

105. Defendants are strictly liable for the economic damages that the Joists have cause and will continue to cause Plaintiffs into the future under common law principles of product liability.

106. As a direct and proximate result of Defendants' defective design of the Joists and Westport's liability as the supplier of the Joists, Plaintiffs seek all legal and appropriate noneconomic damages, including prejudgment interest, in an amount to be proven at trial in excess of seventy-five thousand dollars ($75,000).

## EIGHTH CLAIM – COMMON LAW FAILURE TO WARN

107. Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

108. Weyerhaeuser owed a duty to properly design, develop, formulate, test and manufacture a defect free product for the consuming public.

109. At all relevant times Weyerhaeuser manufactured and Westport was a supplier of the Joists.

110. Defendants had a duty to disclose the foreseeable risks associated with the Joists installed into Plaintiffs' home or other structures.

111. At the time the Joists were installed in Plaintiff's home or other structures, Defendants were aware or reasonably should have been aware of the foreseeable risk associated with the use of its Joists.

112. Defendants failed to exercise reasonable care to warn Plaintiffs about the potentially harmful effects of using the Joists in a manner that a reasonable person would under the same or similar circumstances and Defendants should have known that its Joists, even when used as intended, might

be harmful or injurious to the Plaintiffs.

113.    Plaintiffs were unaware of the dangerous nature of the Joists and Defendants knew or should have known that plaintiffs would not realize the dangerous condition of the Joists.

114.    Defendants failed to exercise reasonable care and give adequate warnings or instructions to Plaintiffs or any other consumer about the foreseeable dangers stemming from the use of the Joists.

115.    At all relevant times, the Joists did not conform to the representations made by the Defendants.

116.    Due to the Defendants' failure to provide adequate warnings or instructions, Plaintiffs have been and will continue to be harmed, which could have been avoided with adequate warnings before Defendants used the Joists in Plaintiffs' home.

117.    Because of the lack of warnings, Defendants are strictly liable for the economic damages that the Joists have caused and will cause Plaintiffs into the future under common law principles of product liability.

118.    As a direct and proximate result of Defendants' failure to warn under common law principles, and Westport's liability as the supplier of the Joists, Plaintiffs seek all legal and appropriate noneconomic damages, including prejudgment interest, in an amount to be proven at trial in excess of seventy-five thousand dollars ($75,000).

**<u>NINTH CLAIM – STATUTORY FAILURE TO WARN</u>**

119.    Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

120.    Weyerhaeuser owed a duty to properly design, develop, formulate, test and manufacture a defect free product for the consuming public.

121. At all relevant times Westport was a supplier of the Joists as defined by Section 2307.71, et seq. of the Ohio Revised Code

122. Defendants had a duty to disclose the foreseeable risks associated with the Joists installed into Plaintiffs' home or other structures.

123. At the time the Joists were installed in Plaintiff's home or other structures, Defendants were aware or reasonably should have been aware of the foreseeable risk associated with the use of its Joists.

124. Defendants failed to exercise reasonable care to warn Plaintiffs about the potentially harmful effects of using the Joists in a manner that a reasonable person would under the same or similar circumstances and Defendants should have known that its Joists, even when used as intended, might be harmful or injurious to the Plaintiffs.

125. Plaintiffs were unaware of the dangerous nature of the Joists and Defendants knew or should have known that plaintiffs would not realize the dangerous condition of the Joists.

126. Defendants failed to exercise reasonable care and give adequate warnings or instructions to Plaintiffs or any other consumer about the foreseeable dangers stemming from the use of the Joists.

127. At all relevant times, the Joists did not conform to the representations made by the Defendants.

128. Due to the Defendants' failure to provide adequate warnings or instructions, Plaintiffs have been and will continue to be harmed, which could have been avoided with adequate warnings before Defendants used the Joists in Plaintiffs' home.

129. As a direct and proximate result of Defendants' conduct, Plaintiffs were harmed and will continue to be harmed. Plaintiffs seek all legal and appropriate pecuniary, nonpecuniary and punitive damages in an amount to be proven at trial in excess of seventy-five thousand dollars

($75,000).

## TENTH CLAIM – NEGLIGENCE

130.    Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

131.    Defendants undertook a duty to remediate the dangerous condition caused by the defective Joists and owed a duty to use reasonable care in performing such remediation to the dangerous condition the Defendants caused.

132.    Not only were the Joists unreasonably dangerous when used in the construction of residential homes and other structures, but the remediation meant to rectify the dangers caused by Defendants was not done with the exercise of reasonable care.

133.    Defendants were aware, or reasonably should have been aware, of the foreseeable risks associated with the failure to properly remediate the condition caused by the defective Joists.

134.    Defendants deviated from the common standards of workmanship and failed to exercise reasonable care by installing and attempting to remediate the Joists in Plaintiffs' home.

135.    The injuries and damages incurred by the Plaintiffs could have been reasonably foreseen by Defendants.

136.    As a direct and proximate result of Defendants' conduct, Plaintiffs were harmed and will continue to be harmed. Plaintiffs seek all legal and appropriate pecuniary, nonpecuniary and punitive damages in an amount to be proven at trial in excess of seventy-five thousand dollars ($75,000).

## ELEVENTH CLAIM – VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT

137.    Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same

were fully rewritten herein.

138.    The Joists are a consumer product as defined under 15 U.S.C. § 2301(1).

139.    Defendants are a supplier and a warrantor as defined in 15 U.S.C. § 2301(4)-(5).

140.    The warranty that came with the products constitutes a "written warranty" under 15 U.S.C. § 2301(6)(A)-(B).

141.    Plaintiffs are "consumers" as defined under 15 U.S.C. § 2301(3).

142.    Defendants are liable to Plaintiffs pursuant to 15 U.S.C. § 2310(d)(1), because they breached its written warranties as set forth above.

143.    In connection with its sales of the Joists, Defendants gave an implied warranty as defined in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. As a part of the implied warranty of merchantability, Defendants warranted that the Joists, among other things, were fit for their ordinary purpose as a safe building product that complies with all applicable laws and regulations. Defendants are liable to Plaintiffs under to 15 U.S.C. § 2310(d)(1), because they breached the implied warranty of merchantability.

144.    Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs are entitled to recover the following damages proximately caused by Defendants' breaches of the written warranties and the implied warranty of merchantability: (a) direct economic damages at the point of sale in the amount of the difference in value between the value of the Joists as warranted (the full purchase price) and the value of the Joists as delivered ($0); and (b) consequential economic damages at the point of repair in the form of the cost of repair, replacement and/or removal of the Joists.

145.    In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiffs in connection with the commencement and prosecution of this action.

## TWELFTH CLAIM – NEGLIGENT INFLICTION OF BODILY INJURY

146.    Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

147.    Defendants had the duty to take reasonable steps to ensure that their actions would not inflict foreseeable bodily and personal injuries and physical harm upon their customers and other foreseeable individuals, including without limitation Plaintiffs.

148.    Defendants knew or reasonably should have known and/or foreseen that installing Flak-Jacket Joists in Plaintiffs' homes would result in the off-gassing of dangerous and unhealthy levels of invisible and noxious formaldehyde gas into Plaintiffs' homes, where Plaintiffs, their children and their pets would live and reside.

149.    Defendants knew or reasonably should have known and/or foreseen that the off-gassing of dangerous and unhealthy levels of invisible and noxious formaldehyde gas into Plaintiffs' homes would result in bodily injury, physical harm, illnesses, ailments, medical conditions and personal injuries on Plaintiffs, their children, their pets, and all living things exposed to such gas in Plaintiffs' homes.

150.    Defendants breached their duty of reasonable due care towards their customers and other individuals who would be foreseeably exposed, including without limitation Plaintiffs, and by their actions, separately and in combination with each other, negligently inflicted bodily injuries, physical harm, illnesses, ailments, medical conditions and personal injuries on Plaintiffs, their children, their pets and all living things residing in Plaintiffs' homes.

151.    As a direct and proximate result of Defendants' negligent infliction of bodily injury and physical harm, Plaintiffs seek all legal remedies and any and all appropriate pecuniary, nonpecuniary and punitive damages in an amount to be proven at trial in excess of seventy-five thousand dollars

($75,000).

### THIRTEENTH CLAIM – NEGLIGENT INFLICTION OF PROPERTY DAMAGE AND NEGLIGENT FAILURE TO SUPERVISE SUBCONTRACTORS

152.   Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

153.   Defendants had the duty to take reasonable steps to ensure that their actions would not inflict damage upon the real and/or personal property of their customers and other foreseeable individuals, including without limitation Plaintiffs.

154.   Defendants knew or reasonably should have known and/or foreseen that installing Flak-Jacket Joists in Plaintiffs' homes would result in the off-gassing of dangerous and unhealthy levels of invisible and noxious formaldehyde gas into Plaintiffs' homes, thus causing substantial damage to Plaintiffs' real property.

155.   Defendants knew or reasonably should have known and/or foreseen that the off-gassing of dangerous and unhealthy levels of invisible and noxious formaldehyde gas into Plaintiffs' homes would result in property damage to Plaintiffs' real and personal property, including during the process of attempting to remediate the effects of the formaldehyde gas.

156.   Defendants breached their duty of reasonable due care towards their customers and other individuals who would be foreseeably exposed, including without limitation Plaintiffs, and by their actions, separately and in combination with each other, negligently inflicted damage to Plaintiffs' real and/or personal property, including without limitation as the result of Defendants' negligent supervision or negligent failure to supervise the contractors and subcontractors hired to conduct the remediation who damaged Plaintiffs' real and personal property in the process.

157.   As a direct and proximate result of Defendants' negligent infliction of property damage, including without limitation their negligent supervision of and/or failure to supervise contractors and

subcontractors, Plaintiffs seek all legal remedies and any and all appropriate pecuniary, nonpecuniary and punitive damages in an amount to be proven at trial in excess of seventy-five thousand dollars ($75,000).

### FOURTEENTH CLAIM – RECKLESS AND WANTON INFLICTION OF BODILY INJURIES AND PROPERTY DAMAGE, AND RECKLESS AND MALICIOUS DISREGARD FOR THE RIGHTS AND SAFETY OF OTHERS

158.     Plaintiffs adopt and incorporate herein by reference all claims, counts, allegations and averments contained in this Complaint, whether stated before or after this claim or count, as if same were fully rewritten herein.

159.     Defendants, and each of them, jointly and severally, recklessly and wantonly inflicted on Plaintiffs the bodily injuries and property damage alleged above, and jointly and severally acted with reckless and malicious disregard for the rights and safety of others, including Plaintiffs, and therefore are liable for punitive damages.

160.     As a direct and proximate result of Defendants' reckless and wanton infliction of personal injuries and property damage, and their reckless and malicious disregard  for the rights and safety of others, including Plaintiffs, Plaintiffs seek all legal remedies and any and all appropriate punitive damages in an amount to be proven at trial in excess of seventy-five thousand dollars ($75,000).

WHEREFORE, Plaintiffs, and each of them, demand judgment against Defendants, Weyerhaeuser Company and Westport Homes, Inc., and each of them, jointly and severally, for:

1.     Compensatory damages, including without limitation for economic injuries, non-economic injuries, personal injuries, illnesses, ailments and medical conditions, bodily harm, damage to real property, damage to personal property, and other injuries and damages in an amount in excess of Seventy-five Thousand Dollars ($75,000.00) for each Plaintiff to be determined at the trial of this action;

2.     Punitive damages for Defendants' reckless and wanton infliction of bodily harm and for Defendants' reckless and malicious disregard for the rights and safety of Plaintiffs and others in an amount in excess of Ten Million Dollars ($10,000,000.00) to be determined at the trial of this action;

3.     Interest on Plaintiffs' damages from and after July 17, 2017, at the highest rate of interest allowed by law;

4.     The costs of this action, including reasonable attorneys' fees; and

5.     Such other and further relief as the Court may deem to be just and proper.

> /s/ *Eric H. Zagrans*
> Eric H. Zagrans (0013108)
> ZAGRANS LAW FIRM LLC
> 5077 Waterford Drive, Suite 302
> Elyria, Ohio 44035
> (216) 771-1000 (telephone)
> (866) 261-2008 (facsimile)
> eric@zagrans.com (e-mail)
>
>
> /s/ *Steven M. Goldberg*
> Steven M. Goldberg (0041344)
> THE GOLDBERG LAW FIRM CO., L.P.A.
> Solon Business Campus
> 31300 Solon Rd., Suite 12
> Solon, OH 44139
> 440.519.9900 (telephone)
> 877.464.4652 (facsimile)
> steven@smglegal.com (e-mail)
>
> *Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs hereby demand a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all issues so triable.

> /s/ *Eric H. Zagrans*
> Eric H. Zagrans